UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JILL VAN REMMEN,

        Plaintiff,

v.                                                    Case No. 18-C-965

ANDREW SAUL,
Commissioner of Social Security,

        Defendant.

**DECISION AND ORDER**

      Plaintiff Jill Van Remmen filed this action for judicial review of the final decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act. Van Remmen contends that the decision of the administrative law judge (ALJ), which became final after the Appeals Council denied review, R. 6–9, was erroneous for three reasons: (1) the ALJ failed to properly assess her pain and credibility in accord with Social Security Ruling (SSR) 16–3p; (2) the ALJ failed to adopt limitations as to handling and fingering; and (3) the ALJ failed to adequately support the 10% off-task limitation. Pl.'s Br., Dkt. No. 16 at 6. For the reasons provided below, the Commissioner's decision will be affirmed.

**BACKGROUND**

      Van Remmen filed an application for DIB on July 23, 2015, alleging disability beginning March 8, 2008 due to the following conditions: lesion on the brain, vertigo, chronic migraines, chronic joint pain, and Sjogren's syndrome. R. 15, 161–64, 179. After her application was denied

initially on October 23, 2015 and upon reconsideration on April 28, 2016, Van Remmen requested a hearing before an ALJ. R. 44, 49, 53. ALJ Jeffry Gauthier held a hearing on October 12, 2016, at which Van Remmen, who was represented by counsel, and a vocational expert (VE) testified. R. 561–62.

Prior to her July 23, 2015 application for DIB, Van Remmen previously filed for Title II disability benefits in March 2013, alleging an onset date of November 1, 2005. R. 15. Her claim was denied on July 31, 2013 and not pursued further. In the written decision on the claim presently before the court, the ALJ noted that this past denial precludes review of the issue of disability prior to August 1, 2013, as Van Remmen is claiming an alleged onset date within the previously adjudicated period, which was addressed in an unchallenged final administrative decision. *Id.* The relevant period for purposes of the ALJ's decision and for judicial review in this court is therefore August 1, 2013 through December 31, 2014, the date last insured (DLI), when Van Remmen was forty-eight years old.

At the October 12, 2016 administrative hearing, the ALJ and Van Remmen's attorney discussed an application Van Remmen filed for Supplemental Security Income (SSI) under Title XVI of the Social Security Act. Although shortly before the hearing Van Remmen reapplied for SSI after initially being denied due to excess resources, the ALJ found that he could not consider the SSI claim because it was not yet properly before him. R. 567–71. The hearing therefore proceeded on Van Remmen's application for DIB. At the time of the hearing, Van Remmen was 50 years old and staying in a house with a friend. R. 572–73.

Van Remmen testified about her prior work history. R. 575–79. From 1999 until March 2008, Van Remmen worked as a manager at a restaurant her family owned, which required her to

make the schedule, do the inventory, and order product. R. 575–76. Physically, this role required her to be on her feet all day and lift up to 25 or 30 pounds. R. 576. After her father passed in 2006, Van Remmen became the restaurant's owner, but she closed the business shortly thereafter because she could not handle the lifting and being on her feet all day and she could not find a trustworthy manager to run it. R. 576, 577, 596–98. In 2011, Van Remmen worked part-time as a cashier at a gas station for four months, but she quit because she could not stand for long periods of time. R. 577–78.

When asked what medical conditions most limited her ability to work, Van Remmen testified that joint pain, which she experiences in all joints and for which she takes medications that reduce the pain by about 50%, is most prohibitive. R. 579–82. She testified that her doctors have yet to identify the source of this pain. R. 580–81. She also testified that her dizziness, migraines, and vertigo are prohibitive. R. 582. She explained that she experiences dizziness a couple times per month, which sometimes lasts up to three days and causes her to fall roughly six times per year. R. 583, 594. She testified that she had MRIs that revealed she had brain lesions but that her doctors do not know what caused them. R. 583, 586–87. She treats her migraines, which she testified occur four or five times per month and can last up to 24 hours, by laying down in a dark room with a cold compress on her forehead and taking ibuprofen. R. 587, 589–90.

As for daily living, Van Remmen testified that she lies down for about 22 out of 24 hours each day, and when not lying down she goes grocery shopping and to doctors appointments, showers, cooks, performs light cleaning, and takes care of her dog. R. 591–93. Her hobbies include reading, watching television, and playing on her phone, and she estimated that she was capable of lifting a maximum of ten pounds. R. 591–92.

In a written decision dated February 13, 2017, the ALJ concluded that Van Remmen was not disabled within the meaning of the Social Security Act from her alleged onset date of March 8, 2008 through December 31, 2014, her DLI. R. 24. To reach this conclusion, the ALJ followed the Social Security Administration's (SSA's) five-step sequential evaluation process. R. 16–17. At step one, the ALJ determined that Van Remmen did not engage in substantial gainful activity from March 8, 2008 through her DLI. R. 17. At step two, the ALJ found that Van Remmen had the following severe impairments: Sjogren's syndrome and possible osteoarthritis. R. 18. At step three, the ALJ determined that Van Remmen did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.*

After reviewing the entire record, the ALJ concluded that, through the DLI, Van Remmen had the RFC to

> perform light work as defined in 20 C.F.R. 404.1567(b) except she is further limited. She can occasionally climb ramps and stairs. She cannot climb ladders, ropes, or scaffolds, or work at unprotected heights or around moving mechanical parts. The claimant is expected to be off task less than 10 percent of the time in an 8-hour workday, in addition to regularly scheduled breaks.

R. 19. At step four, the ALJ determined that Van Remmen was capable of performing past relevant work as a restaurant manager/owner. R. 22. At step five, the ALJ made the alternative finding that there existed jobs in significant numbers in the national economy that Van Remmen could have performed, such as housekeeper/cleaner and office helper. R. 23–24. Based on these findings, the ALJ concluded that Van Remmen was not disabled from March 8, 2008 through her DLI. R. 24. After the ALJ's decision became final, Van Remmen commenced this action for judicial review.

**LEGAL STANDARD**

Judicial review of the decisions of administrative agencies is intended to be deferential. *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010). The Social Security Act specifies that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind could accept as adequate to support a conclusion." *Schaaf v. Astrue*, 602 F.3d 869, 874 (7th Cir. 2010). Although a decision denying benefits need not discuss every piece of evidence, remand is appropriate when an ALJ fails to provide adequate support for the conclusions drawn. *Jelinek v. Astrue*, 662 F.3d 805, 811 (7th Cir. 2011). The ALJ must provide a "logical bridge" between the evidence and conclusions. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). Given this standard, and because a reviewing court may not substitute its judgment for that of the ALJ, "challenges to the sufficiency of the evidence rarely succeed." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005).

Additionally, the ALJ is expected to follow the SSA's rulings and regulations in making a determination. Failure to do so, unless the error is harmless, requires reversal. *Prochaska v. Barnhart*, 454 F.3d 731, 736–37 (7th Cir. 2006). Finally, judicial review is limited to the rationales offered by the ALJ. *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012) (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 93–95 (1943); *Campbell v. Astrue*, 627 F.3d 299, 307 (7th Cir. 2010)).

**ANALYSIS**

**A. Assessment of Pain and Credibility Under SSR 16–3p**

The first issue for review is whether the ALJ failed to properly assess Van Remmen's pain and credibility consistent with Social Security Ruling (SSR) 16–3p. An ALJ's credibility

determination will only be overturned if it is "patently wrong, which means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy*, 759 F.3d at 816). A claimant's statements about his or her pain or other symptoms will not alone establish a disability. *Id.* ("We will not find an individual disabled based on alleged symptoms alone."); 20 C.F.R. § 404.1529(a).

Van Remmen identifies a few purported errors in the ALJ's assessment of Van Remmen's credibility. First, she argues that the ALJ erroneously used the fact that, as of May 2013, she had not seen her rheumatologist in over a year as evidence weighing against her credibility. R. 20. According to Van Remmen, the ALJ was required under SSR 16–3p to ask her why she had not seen her rheumatologist in over a year before using that fact against her. *See* SSR 16–3p ("[W]e will consider and address reasons for not pursuing treatment that are pertinent to an individual's case."). Van Remmen correctly points out that the ALJ could not hold her non-treatment against her absent asking why she did not seek treatment. But an ALJ's analysis need not be reversed because it is not flawless, especially where, as here, the ALJ's credibility determination is otherwise well-supported. *See Simila v. Astrue*, 573 F.3d 503, 517–18 (7th Cir. 2009).

The ALJ noted that Van Remmen's May 2013 physical examination was "unremarkable" and that "she was alert, oriented, and had normal range of motion, strength, gait, sensation, and motor function, and intact cranial nerve function with no focal deficits." R. 20. The ALJ also noted that treatment notes through Van Remmen's DLI document "largely unremarkable physical examinations, with some tenderness to palpation, but normal gait, no abnormalities in her joints,

6

and intact cranial nerve function." *Id.* Additionally, the ALJ noted that treatment records and Van Remmen's own statements showed that her symptoms improved and stabilized with treatment. *Id.* The ALJ further noted that Van Remmen's pain management specialist observed her moving from seated to standing positions without difficulty and walking with a steady gait. R. 20–21. The ALJ also took note of Van Remmen's ability to perform daily activities, such as attending to personal care, caring for her dog, preparing meals, cleaning, doing laundry, driving, biking, mowing, and snow shoveling, to determine that her symptoms could not be as debilitating as alleged. R. 21. In light of the ALJ's reliance on this specific evidence, the ALJ's credibility assessment was not "patently wrong" such that reversal is warranted. *See Murphy*, 759 F.3d at 816.

Second, Van Remmen argues that she "had at least some type of myalgia" that should be treated like fibromyalgia, a condition the severity of which is "difficult to determine . . . because of the unavailability of objective clinical tests." *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); Pl.'s Br., Dkt. No. 16 at 12. She argues that, given the nature of myalgia, the ALJ's reliance on a physical examination showing her to be alert, oriented, having a normal range of motion, strength, gait, sensation, motor function, and nerve function is misplaced. Relying on *Sarchet*, Van Remmen argues that the ALJ should have "take[n] greater caution in evaluating [her] condition." Pl.'s Br., Dkt. No. 16 at 15 (citing *Sarchet*, 78 F.3d at 307).

The ALJ noted that the etiology of Van Remmen's multi-joint pain is unknown, her clinical presentation was not consistent with fibromyalgia, and that Sjogren's syndrome was ruled out as the source of pain. R. 21, 385, 390. While Van Remmen is correct that the severity of myalgia is difficult to determine, she does not explain what the ALJ giving "greater caution" would entail, other than, it seems, full and complete adoption of her self-reports. Even in cases of fibromyalgia,

7

which Van Remmen did not have, these subjective complaints are not alone sufficient. *See* SSR 12–2p. Nor does the *Sarchet* case upon which Van Remmen relies call for any analysis other than the one that the ALJ performed. Indeed, the *Sarchet* court recognized that it would not be unreasonable for an ALJ to deny benefits because he or she believed medical reports that a claimant with fibromyalgia had enough strength to work and disbelieved the claimant's own testimony as long as a logical bridge is built to support those conclusions. *See Sarchet*, 78 F.3d at 307.

Far from ignoring Van Remmen's pain, the ALJ acknowledged that her "medical records document a history of chronic joint pain, with no abnormalities in objective findings during the relevant period." R. 20–21. The ALJ properly considered the lack of any abnormal findings in the relevant period as a factor in evaluating Van Remmen's symptoms. *See* 20 C.F.R. § 404.1529(c)(2). Contrary to Van Remmen's claim, the ALJ also properly relied on the May 2013 examination and other physical examinations through her DLI showing normal gait, strength, motor function, and range of motion as well as no joint abnormalities. R. 20. That Van Remmen was observed moving from seated to standing positions without difficulty was also appropriately noted. R. 20–21. Each of these observations is directly relevant to evaluating the intensity and persistence of Van Remmen's symptoms and the extent to which those symptoms limit her ability to work. That Van Remmen declined interventional pain management procedures, such as intra-articular shoulder and knee injections, because she does not like needles is also relevant to these inquiries, especially in light of her testimony at the hearing that she was practically bedridden. R. 21, 422, 591. Again, reliance on this evidence is not patently wrong.

Van Remmen separately takes issue with the ALJ's citation to her daily activities, arguing that the ALJ mischaracterized and omitted important details. Van Remmen properly acknowledges

8

that the ALJ may use daily activities to discredit her testimony, Pl.'s Br., Dkt. No. 16 at 19; *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citing 20 C.F.R. § 404.1529(c)(3)(i); SSR 96–7p; *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013)), but contends that the ALJ mischaracterized the activities by failing to mention that she was "down for the count" for two days after house and yard work (e.g. mowing, snow shoveling), that her "cooking" involved making cereal, sandwiches, tacos, eggs, rice dishes, and noodles, that she lacked energy, and that she reported limitations in lifting, squatting, bending, standing, and other movements. Pl.'s Br., Dkt. No. 16 at 21–22; R. 240–44.

But the ALJ acknowledged each of these. The ALJ noted that Van Remmen reported that she "experienced constant pain and lacked energy," that she prepared "simple" meals, and that "she experienced an increase in pain after doing outdoor work." R. 21. The ALJ addressed Van Remmen's reported limitations in movement elsewhere in the credibility determination, as those movements are part of a different section of the function report that Van Remmen cites. *See* R. 20–21 (considering standing, sitting, gait, strength, motor function, and range of motion), 240, 244. The ALJ here considered Van Remmen's daily activities in the same way the Seventh Circuit found acceptable in *Loveless*. *See* 810 F.3d at 508. Rather than "equating activities of daily living with an ability to work," the ALJ considered Van Remmen's ability to carry out daily tasks as "one factor" in the credibility assessment. *Id.* The ALJ therefore did not err.

Van Remmen also argues that the ALJ failed to follow the two-step process for evaluating a claimant's symptoms set forth in SSR 16–3p. At step one, the ALJ determines "whether the [claimant] has a medically determinable impairment (MDI) that could reasonably be expected to produce the individual's alleged symptoms." SSR 16–3p. After the existence of such an

9

impairment is established, at step two, the ALJ evaluates the intensity and persistence of the claimant's symptoms, such as pain, and determines the extent to which those symptoms limit the claimant's ability to perform work-related activities. *Id.* The second step involves an examination of "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of the symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* Van Remmen argues that "[n]othing in the decision shows such an evaluation." Pl.'s Br., Dkt. No. 16 at 24.

She is mistaken. Not only did the ALJ set forth this standard, but the ALJ proceeded to find that Van Remmen's MDIs "could reasonably be expected to cause the alleged symptoms" (step one) and to determine that Van Remmen's statements about her symptoms "are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision" (step two). R. 19–20. Van Remmen also claims that the ALJ failed to consider her subjective complaints. She is again mistaken, as the ALJ acknowledged her reports of "joint and muscle pain," "multi-joint pain with palpation," "diffuse body pain," "debilitating pain," "constant pain and [lack of] energy," "history of chronic joint pain," and "fatigue and lightheadedness." R. 20–22. The ALJ can hardly be said to have "outright dismissed" or otherwise ignored Van Remmen's subjective complaints. Pl.'s Br., Dkt. No. 16 at 24.

**B. Handling and Fingering Limitations**

The second issue for review is whether the ALJ failed to adopt limitations as to handling and fingering. Van Remmen argues that the medical record noted bilateral hand pain and corresponding treatment and that the ALJ failed to include any handling or fingering limitation in the RFC. *See*

*Diaz v. Carter*, 55 F.3d 300, 307 (7th Cir. 1995) ("An ALJ's failure to consider an entire line of evidence falls below the minimal level of articulation required." (citation omitted)). But most of the "line of evidence" Van Remmen cites predates the relevant period by several years. *See* R. 265 (December 2009), 284–86 (February 2010), 299–300 (March 2010), 304–05 (April 2010), 308–09 (June 2010). The ALJ was entitled to disregard these anachronistic complaints. To demand that these complaints result in a handling or fingering limitation would disturb the disposition of Van Remmen's prior Title II disability benefits application.

As to the relevant period, the ALJ noted that Van Remmen's physical examinations immediately prior to and during the relevant period were unremarkable and indicated no joint abnormalities. R. 20. Although the record reflected that Van Remmen complained of some hand and finger pain as part of her broader complaints of multi-joint pain, *see, e.g.*, R. 401, 416, 423, 581, the ALJ reasonably relied on the October 2015 and April 2016 opinions of state agency reviewing physicians Drs. Janis Byrd and Mina Khorshidi, which noted no manipulative limitations. R. 22. The ALJ assigned these opinions great weight and Van Remmen has not challenged the ALJ's weighing of these opinions. Absent a challenge to these opinions, the ALJ was justified in relying upon them. *See Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) (citing *Scheck v. Barnhart*, 357 F.3d 697, 700 (7th Cir. 2004)).

It is Van Remmen's burden to establish, not the ALJ's burden to intuit, a functional limitation based on evidence in the record. *See Richards v. Berryhill*, 743 F. App'x 26, 30 (7th Cir. 2018) (citing *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005); *Scheck*, 357 F.3d at 702). Van Remmen's citation to her complaints about hand and finger pain, most of which took place outside of the relevant period, is not alone sufficient to carry her burden. *See id.* (citations omitted); *Weaver*

11

*v. Berryhill*, 746 F. App'x 574, 578–79 (7th Cir. 2018); *Samuel S. v. Berryhill*, No. 1:18-cv-00990-MJD-SEB, 2019 WL 168437, at *4 (S.D. Ind. Jan. 11, 2019) (rejecting argument that ALJ erred by failing to include further limitations in RFC based on symptoms of fatigue where no supportive opinion found a specific limitation based on fatigue appropriate). Indeed, Van Remmen actually denied that her conditions affect her ability to use her hands. R. 244. The ALJ therefore committed no error.

**C. ALJ's Support of 10% Off-Task Limitation**

The final issue for review is whether the ALJ failed to adequately support the 10% off-task limitation in the RFC determination. Van Remmen argues that the ALJ offered no explanation for why a 10% time off-task limitation was included in the RFC. According to Van Remmen, her testimony that she experienced dizziness a couple times per month, lasting up to three days and causing falls about six times per year, and that she had migraines four or five times per month, sometimes lasting up to 24 hours, supports a greater-than-10% off-task limitation. *See* R. 583, 587, 589–90, 594. According to the VE, any time off-task greater than 10% would be work preclusive. R. 602.

As part of the RFC, the ALJ determined that "the claimant is expected to be off task less than 10 percent of the time in an 8-hour workday, in addition to regularly scheduled breaks." R. 19, 21. The ALJ noted that "[t]hese restrictions additionally contemplate the claimant [sic] reports of fatigue and lightheadedness, as well as potential side effects of pain medication." R. 21–22. This is not a case where the ALJ "made no effort" to build a logical bridge between the evidence and conclusion or failed to explain why certain opinions as to time off-task were weighted greater than others, as in *Lanigan v. Berryhill*, 865 F.3d 558, 563–64 (7th Cir. 2017). The ALJ's explicit accommodation for these symptoms demonstrated that they were considered and evaluated

12

alongside Van Remmen's other allegations about symptoms, which the ALJ found inconsistent with substantial evidence in the record. R. 20–22. The ALJ's finding of an off-task limitation of up to 10% of the work day is based on his judgment as to what effect Van Remmen's symptoms might have on her ability to work; it is not a specific measurement. *Priessnitz v. Berryhill*, No. 17-C-372, 2018 WL 1136100, at *8 (E.D. Wis. Mar. 1, 2018).

Though the ALJ could have undoubtedly been more thorough in explaining the off-task limitation, the brevity of the ALJ's explanation is a reflection of the scarcity of evidence in the record during the relevant period supporting the debilitating nature of her fatigue, lightheadedness, and potential medication side effects. Van Remmen cites her subjective complaints of migraines and vertigo to argue that her time off-task would exceed 10%. But the ALJ already determined at step two of the evaluative process that Van Remmen's migraines and vertigo were not MDIs that had more than a minimal effect on her ability to work. R. 18; 20 C.F.R. § 404.1521; SSRs 85–28, 96–3, 96–4p. Moreover, Van Remmen did not testify, and the evidence in the record does not suggest, that her fatigue, lightheadedness, and possible medication side effects were the result of migraines and vertigo. Nor did the ALJ accept that Van Remmen's symptoms were as severe as she alleged, as was throughly explained in the decision.

Notably, apart from her testimony during the hearing that she lies down for 22 out of 24 hours each day, Van Remmen does not cite to any evidence that directly supports her claims of debilitating symptoms of fatigue, lightheadedness, or medication side effects during the relevant time period. Even the 22-hour figure was not tied to fatigue, lightheadedness, or medication side effects. R. 590–91. Instead, after Van Remmen testified that she cannot stand or sit for more than an hour without joint pain, the ALJ asked her what position she occupies during daily life, to which

13

she responded that she lies down for 22 out of 24 hours. *Id.* If anything, she lies down to avoid pain; there is no suggestion that this figure is the result of fatigue, lightheadedness, or medication side effects. The dearth of evidence showing that these symptoms are severe and debilitating as well as the ALJ's acknowledgment of and evaluation of the severity of Van Remmen's symptoms led the ALJ to reasonably conclude that, to the extent these symptoms exist, they only marginally impact Van Remmen's ability to work, hence the "less than 10 percent" limitation. The ALJ therefore committed no error, as he provided the logical bridge necessary to support his conclusion.

Van Remmen argues that "[t]he problem is not that the ALJ failed to articulate why a limitation for off-task behavior was warranted, e.g., to address Van Remmen's 'lightheadedness, fatigue, and potential medication side effects;' but rather in how the ALJ determined that 10% was the appropriate level of impairment." Pl.'s Reply Br., Dkt. No. 27 at 16 (quoting R. 22). According to Van Remmen, the ALJ "had no more basis for the 10% off-task limitation than that [sic] a limitation to 15% off-task." Pl.'s Br., Dkt. No. 16 at 27. But Van Remmen's request for exactness makes little sense in this context. The ALJ's assessment that Van Remmen would be off-task less than 10% each work day is grounded in the ALJ's best judgment as to the severity of Van Remmen's symptoms of fatigue, lightheadedness, and potential medication side effects. The resulting time off-task, if any, allows the VE to assess whether the claimant is capable of full-time work. *See Ambelang v. Colvin*, No. 12-cv-805-wmc, 2014 WL 4926191, at *6 n.2 (W.D. Wis. Sept. 30, 2014). Here, the ALJ's off-task limitation enjoys the support of substantial evidence and was sufficiently explained, especially given the lack of specific evidence of fatigue, lightheadedness, and medication side effects in the record.

14

## CONCLUSION

For the foregoing reasons, the decision of the Commissioner is **AFFIRMED**.  The Clerk is directed to enter judgment accordingly.

**SO ORDERED** this   31st   day of August, 2019.

                                               s/ William C. Griesbach
                                               William C. Griesbach, Chief Judge
                                               United States District Court